This is an appeal from a judgment of conviction and sentence to life imprisonment without parole, on a trial by jury, on an indictment charging appellant with intentionally killing "JOHN BROWN A/K/A JOHN EZRA BROWN" under aggravated circumstances as proscribed by the Alabama Death Penalty and Life Imprisonment Without Parole Act, originally codified by Code 1975, §§ 13-11-1 through 13-11-8, and thereafter by Alabama Criminal Code, §§ 13A-5-30 through 13A-5-38, which have been repealed and superseded by §§ 13A-5-39 through 13A-5-59. The "repealer," however, "shall not affect the application of pre-existing law to conduct occurring before 12:01 A.M. on July 1, 1981." The indictment in this case was returned in September 1978.
The case has been given a stopover privilege at each station of the ascending and descending judicial escalator during its four-year journey and is now in this Court on the initial stage of a second appeal from the Circuit Court, it being the same case as Coon v. State, Ala.Cr.App., 380 So.2d 980, aff. ExParte Coon, 380 So. 990, vacated 449 U.S. 810, 101 S.Ct. 58,66 L.Ed.2d 14, on remand, 405 So.2d 703, and 405 So.2d 704.
The major position taken by appellant, which was taken by him in the trial court also, constitutes a challenge of the correctness of the opinion in Beck v. State, Ala.,396 So.2d 645 (Dec. 19, 1980) as modified on denial of rehearing (March 6, 1981). The target of appellant's challenge of said opinion is that part of the opinion in which it was held that theunconstitutional part of the Alabama death penalty statute then under consideration which precludes the judge from instructing the jury on lesser included offenses, even though a lesser included offense is supported by the evidence, did not vitiate the statute in its entirety and that the statute could be and was "salvaged by severing the preclusion clause and adopting [judicially] a procedure which would preserve the legislative requirement that the jury fix the punishment at death if it finds the accused guilty of a capital offense." Beck, supra, 396 So.2d p. 656.
The judgment appealed from by the instant appeal is in pertinent part as follows:
 "The Defendant having been duly arraigned and plead not guilty to the indictment thereupon on the 25th day of August, 1982, the Defendant made known to the Court that he wished to withdraw his plea of not guilty and plead guilty. The Defendant was duly examined by the Court in the presence of his attorney after filing a written request, substantially in the form of an Ireland waiver, and the Court was satisfied that the Defendant was voluntarily and intelligently offering to plead guilty. Whereupon, a duly sworn and empaneled jury, to-wit, __________ __________ __________ [name of the foreman] and eleven others upon presentation of the State's evidence and upon their oaths do say: `We, the Jury, find the Defendant guilty of the capital offense charged in the indictment.'
 "Upon receipt of jury verdict a hearing was held on the aggravating and mitigating circumstances. After presentation of the evidence, argument of counsel and the charge of the Court, the duly sworn and empaneled jury, to-wit, __________ __________ __________ [name of the foreman] and eleven others, who upon their oaths do say: `We, the Jury, fix the Defendant's punishment at life imprisonment in the penitentiary without parole.' "Upon receipt of the jury verdict, and the Defendant being in open Court and accompanied by his counsel, and being asked by the Court if he had anything to say whether sentence of the law shall not *Page 571 
be pronounced upon him says nothing. It is therefore Considered by the Court and it is the Judgment and Sentence of the Court that the said Defendant, Huey Edward Coon, be imprisoned in the penitentiary of the State of Alabama for the rest of his natural life without benefit of parole.
". . ."
Appellant, in his brief, strongly urges that the cited opinion of the Supreme Court of Alabama in Beck v. State,supra, should be overruled. Even if we could do so, which we cannot, we would not. We emphatically subscribe to it. We do so, however, without agreeing with the position of appellee, as stated in his brief, that defendant's "guilty plea" constitutes a waiver of all non-jurisdictional defects and that, therefore, "This Court need not address [the two issues raised by appellant] on its merits." We are fully persuaded that such contention would be correct in the absence of circumstances pertaining to the plea of guilty that occurred in the instant case which we have not heretofore mentioned and which were not present in the cases relied upon by appellee, Lane v. State, Ala., 412 So.2d 292 (1982) and Graham v. State, Ala.Cr.App.,403 So.2d 275 (1980), cert. quashed, 403 So.2d 286 (Ala. 1981). We now refer to circumstances occurring in the instant case that distinguish it from the conclusions reached in the Lane
and Graham cases, supra.
In May, 1982, after the reversal and remandment of this case, defendant was arraigned again. He pleaded not guilty and the case was continued for trial to August 23, 1982, with leave granted for defendant "to file any motions and pleadings required to be filed before pleading to the indictment provided they are filed at least two weeks before trial date." On August 4, 1982, defendant's attorney filed a demurrer to the indictment and a motion to quash the indictment.
In ground 23 of the demurrer, it is stated:
 "For that the Supreme Court of the State of Alabama, has sought by judicial decree to amend Title 13-11-1 through 13-11-7, Code of Alabama, 1975, so as to give or make a constitutionally valid application of said statutes to this defendant's case, which said amending is void; and if said amending were valid it would have an ex post facto application to this defendant's case."
As the case came on to be heard on a trial by jury on August 25, 1982, the following occurred at an in camera hearing, at which defendant and his attorneys were present:
 "THE COURT: Let the record show the attorneys for the defendant have filed a demurrer to the indictment and motions to quash the indictment, both being filed August 4, 1982, and the Court having duly considered and understood both the demurrer and the motion to quash, they are hereby overruled and denied.
 "MR. ALBRITTON: [Defendant's attorney]: Your Honor, we would like to state for the record at this point that we have numerous grounds assigned in our demurrer and in our motion to quash the indictment and, of course, we don't waive any of the grounds, but I would particularly like to point out to the court that we are taking the position of Beck vs. Alabama, the Supreme Court of the United States case, 447 U.S. 625 [100 S.Ct. 2382, 65 L.Ed.2d 392], held the statute under which Huey Coon was indicted, was unconstitutional. And Beck vs. State, 396 Southern Second, 645, Supreme Court of Alabama decision following the U.S. Supreme Court decision; our position is that that was an unconstitutional invasion of the province of the Legislature by the Supreme Court of Alabama, when they attempted to make an unconstitutional statute constitutional by a judicial amendment of the statute. We say that the Alabama death penalty statute under which the defendant was indicted, which is sections 13-11-1, were declared to be unconstitutional by the Supreme Court of the United States, the defendant should not now be tried for violation of that statute.
 "THE COURT: Now, Mr. Coon, it has been made known to the Court that you *Page 572 
wish to withdraw your plea of `not guilty' and to enter a plea of guilty to the capital offense charged in the indictment. I have here before me a form which I have been advised that your attorneys have gone over this form with you. I would want to know first off, how far did you go in school."
The trial court then proceeded with a thorough inquiry as to whether the proposed withdrawal of the plea of not guilty and interposition of the plea of guilty should be permitted, ruled in favor of permitting it, and the process of qualifying jurors commenced. After the jury was selected, there was considerable evidence by the State as to the facts and circumstances of the alleged capital crime. Immediately after completion of the State's evidence and the State had announced that it rested, another in camera hearing was conducted in the presence of defendant and counsel for the respective parties. The following then occurred:
 "MR. ALBRITTON: Your Honor, the State rested and the defendant moves to exclude the State's evidence and moves the Court to direct a verdict of acquittal and as grounds for our motion, we assign all grounds previously set out in our demurrer to the indictment and in our motion to quash the indictment. And specifically state the ground that the statute under which the defendant has been indicted has been declared by the Supreme Court of the United States to be unconstitutional and the defendant cannot now be tried and convicted of an unconstitutional statute in spite of the later Supreme Court of Alabama case of Beck vs. State that attempts to amend the statute so as to make it constitutional. We have ex post facto application of this defendant's case. And on that constitutional basis we move the Court to direct a verdict of acquittal.
"THE COURT: The motion will be denied.
"MR. ALBRITTON: Defendant rests."
Promptly thereafter, counsel for the respective parties made brief statements to the jury. In the statement of defendant's attorney, he said:
 "Just this statement, Your Honor, may it please the Court, Huey Coon does not ask you to find him `not guilty' in this case. As I told you to begin with, he has pleaded guilty."
Thereupon, the trial court proceeded to charge the jury orally, to which no exception was taken by either party. After the two extra jurors were excused, the court submitted the case to the remaining twelve-person jury with two appropriate forms of verdict, one finding the defendant guilty and the other finding him not guilty. After retirement for deliberation, the jury returned with a verdict finding defendant "guilty of the capital offense charged in the indictment."
Immediately after the verdict of the jury was received and announced by the court, the court stated to the jury that it would "now be necessary to have a hearing as to the fixing of the punishment." Counsel for the State then requested the jury to fix defendant's punishment at life imprisonment without parole. Defendant's counsel made a similar request of the jury. The court then orally charged the jury, calling the attention of the jury to what the court deemed to be "the only aggravating circumstance," saying it was that "the capital felony was committed while the defendant was engaged or an accomplice in a robbery" and that the only mitigating circumstance was the age of the defendant, which, as contended by defendant's attorney, was twenty-one at the time of the commission of the crime. The case was then submitted to the same jury for its determination of the punishment to be fixed, which as shown above was "life imprisonment in the penitentiary without parole."
We are unable to say with absolute certainty that the transcript shows that defendant waived the right he otherwise had to challenge the pertinent part of the opinion in Beck v.State, supra, as mentioned above, but it is clear that the attorney for defendant stated in the presence of the court and opposing counsel that "We don't *Page 573 
waive any of the grounds" set forth in defendant's demurrer and motion to quash, which is sufficient, we think, to show that defendant's attorney then considered that the position now taken by defendant was not waived. We find nothing definite in the transcript to the contrary. If it was waived, as appellee seems to imply, the waiver should have been more clearly shown in order to meet the requirements of Boykin v. Alabama,395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and for similar reason, we think, the trial court would have required clarification before accepting the plea of guilty. The fact that at the conclusion of the evidence in the case defendant's attorney made a strong appeal for the court to "direct a verdict of acquittal" based on the same position he takes now and obtained a definite adverse ruling thereon indicates, at least, that the trial court did not consider that the position had been waived. Furthermore, the fact that the trial court overruled defendant's demurrer and motion to quash the indictment immediately before its consideration of an amendment of defendant's plea from a plea of not guilty to a plea of guilty, suggests a vested status upon which defendant could stand in further proceedings in the case.
Appellant has not taken issue with appellee's contention that defendant in the trial court waived his right to question the correctness of the opinion of the Supreme Court of Alabama inBeck v. State, supra, as discussed above. We feel so strongly that what was held therein is correct that we elect to stand foursquare on it, and we pretermit further consideration of the question of waiver.
Appellant's only other contention for a reversal is that in the selection of a jury to try the case, appellant was limited to sixteen strikes while the State was permitted seventeen strikes. The transcript shows that the first time this point was raised by defendant was after the parties had selected the jury by the process of striking and just after the jurors had taken their seats in the box, when the following occurred:
 "MR. ALBRITTON: [Defendant's attorney]: Let the record show that before the jury was struck, that the defense was informed that the State would have seventeen strikes and the defendant sixteen and the defendant objected to that method of striking and we ask Your Honor, the Court, to allow the defendant to have an unequal number of strikes, being seventeen, and the State having sixteen strikes.
 "THE COURT: The Court denied the motion because that is just the numerical combination of striking alternately and that is just the way it came out. . . ."
Thereupon, the trial of the case before the jury was commenced.
As there is nothing in the record or transcript to the contrary, we must assume that after all challenges for cause had been exercised and all jurors on the panel who should have been excused were excused, the names of forty-seven jurors were on the list of those from which twelve jurors and two extras were to be, and were, selected. This meant that thirty-three, an odd number, were available for the two parties to strike. It is further assumed that the State, as required, struck first and that the parties then proceeded alternately to strike until thirty-three had been thus eliminated, and fourteen remained to hear the case. Perhaps, the State would have been willing for the defendant to have had seventeen strikes and the State sixteen strikes, if the defendant had been willing to strike first, but such a situation would have been irregular and is not here presented. The mathematical result accords with the law and with the practice generally in criminal cases throughout the years. The trial court was correct in ruling as it did on the subject.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his *Page 574 
opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur, except BOWEN, J., who concurs in the result only.